**Arthur CUEVAS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 42844.**

Court of Criminal Appeals of Texas.

May 6, 1970.

Rehearing Denied July 15, 1970.

Jack Paul Leon, San Antonio, for appellant.

Ted Butler, Dist. Atty., Charles Butts, Bill White and Sparta Bitsis, Asst. Dist. Attys., San Antonio, and Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

MORRISON, Judge.

The offense is murder; the punishment, 30 years.

Appellant's first ground of error is that the court erred in admitting a portion of the autopsy report prepared by Dr. Hausman at a time when he was medical examiner for Bexar County. It was first established that at the time of the trial Dr. Hausman had moved to New York City where he had assumed a position in the medical examiner's office of such city. The portion, which will be later quoted, was read to the jury by the administrative assistant who was the custodian of the records of the Bexar County Medical Examiner's Office, and she had transcribed Dr. Hausman's dictation from such report. The careful court examined the report in the absence of the jury, and permitted the witness to read only the portion which stated that it was an autopsy of the body of the person named as deceased in the indictment; the following is the portion which was read:

"The body shows three bullet wounds. One of these is situated in the middle

of the forehead approximately 1 inch above the bridge of the nose. Another bullet wound is situated behind and slightly above the level of the right ear. It is situated 2½ inches above the level of the external auditory canal 1 inch behind the vertical which can be drawn through this canal, when one pictures the body standing up. The third bullet hole was found in the back of the head approximately 1 inch above the occipital protuberance in the midline. Each of these bullet wounds has a bullet contusion ring, and the bullet wounds measure ¼ inch in diameter including the bullett contusion ring."

Appellant attempts to distinguish this case from our relatively recent opinion in Viser v. State, 396 S.W.2d 867. We are are unable to do so. In that case, Dr. Jachimczyk was absent from the city for a day or so and Dr. Bucklin, his associate, was permitted over strenuous and repeated objections to read from Dr. Jachimczyk's inquest report. The portion read does not, as we view it, contain conclusions from which only a doctor might be cross-examined. We are quite familiar, and the writer is embarrassed by Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923, upon which appellant relies. We conclude, however, as we did in Viser v. State, supra, that this is an Article 3731a, Vernon's Ann.Civ.St., fact situation rather than a case in which the accused has been denied his right of confrontation.

■ Appellant's second ground of error is that the court erred in not instructing a verdict of not guilty at the conclusion of the case. The state had introduced evidence of deceased's mother as to a telephone conversation with appellant four days prior to the homicide in which "he said he was going to put a bullet right through her (the deceased's) head and his too."

The gun, which was found at the scene, was shown to have been purchased by appellant two days before the homicide; he gave a name and address other than his own when he purchased the weapon. It was stipulated by the state and joined by appellant and his counsel that the deceased's bullet wounds were inflicted by a pistol. When the investigating officer arrived, he found appellant seated in the kitchen and deceased in the bathroom lying on her back with a bullet hole in her forehead. The next officer who arrived saw a bullet entrance wound in deceased's forehead and one behind her right ear, but did not turn her over to examine the back of her head. Both of these officers observed blood over deceased's body, but the pistol which was lying by her right side had no blood on it. The pistol, a six shot revolver, was empty, but seven spent shells were on the floor. Deceased was shown to be left handed; moreover, the evening she was killed was the first time she had been home after appellant purchased the pistol. While it is true that the state introduced certain statements made by appellant at the scene which might be considered as partially exculpatory, we have reached the same conclusion as we did in Hignett v. State, 170 Tex.Cr.R. 342, 341 S.W.2d 166, which discusses claimed exculpatory portions of a confession, and in Windom v. State, 429 S.W.2d 488, in which we discuss a statement made to the arresting officer. In Hignett v. State, supra, we said, "This is a jury question, not a matter of law, and is to be determined under appropriate instructions from the court. In the case at bar, the court properly submitted the question to the jury in his charge and instructed them to acquit unless the State had disproved such exculpatory statement."

The statements of appellant which he contends were exculpatory were made to the officers upon their arrival at the scene. Officer Moore stated that " * * * he (appellant) made some statement that he and his wife had had an argument." Officer Aguilar testified to the following statement made by appellant:

"I asked, 'Where is your wife now?'. I think he replied, 'She's in the bathroom.' I said, 'Is she hurt?'. He says,

'She got hurt. She got shot while we were struggling over the gun.' "

The trial court in his charge told the jury the following:

"The State had introduced in evidence a statement allegedly made by the defendant that the deceased was shot while she and the defendant were struggling over a pistol. The aforesaid exculpatory statement is to be taken into consideration by the jury as evidence in connection with all other facts and circumstances in the case. In this connection you are instructed that the State is bound by the said exculpatory statement unless you believe from the evidence beyond a reasonable doubt that the State has disproved the aforesaid exculpatory statement by other evidence either direct or circumstantial.

You are therefore instructed that unless you believe from the evidence beyond a reasonable doubt that the State has disproved the aforesaid exculpatory statement, you will acquit the defendant and find him not guilty."

Under the holdings in Hignett v. State, supra, and Windom v. State, supra, this was sufficient.

Finding no reversible error, the judgment is affirmed.