Lonnie Ray **CHAPMAN**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 45333.

Court of Criminal Appeals of Texas.

Sept. 25, 1972.

Rehearing Denied Nov. 22, 1972.

Douglas Tinker, Corpus Christi, for appellant.

William B. Mobley, Jr., Dist. Atty., and Phillip Westergren, Asst. Dist. Atty., Corpus Christi, and Jim D. Vollers, State's Atty., Robert A. Huttash, Asst. State's Atty., Austin, for the State.

OPINION

DALLY, Commissioner.

The conviction is for robbery by firearms; the punishment, fifty years imprisonment.

We first consider the appellant's contention that "there is no evidence or insufficient evidence to corroborate the accomplice testimony of Willie Sterling Hamilton."

Lewis Pollack, the complaining witness named in the indictment, an employee of the Circle K Drive-In located on Leopard Street in Corpus Christi, was working there during the early morning hours of July 22, 1970. He testified that at approximately 2:00 a.m. a "big Negro (Willie Hamilton) came in and he got some Feen-a-mint Chewing Gum off the drug counter

and walked over to the cash register and I started to ring it up. I looked up and I asked him if that would be all and he had a pistol pointed right at me and he said, 'I'll take it all, Buddy, put it in the paper sack,' which I did, both drawers and then he said, 'Get down on the floor and stay down.' " Pollack was "scared" and the robber took approximately $70.00 in cash which he carried from the drive-in in a paper sack.

Meredith Calloway, a twenty-three year old cabinet maker, was outside the Circle K Drive-In on Leopard Street at the time in question, talking to a friend, John Mikulec. They both testified that while they were talking they noticed a car pull in front of the Harley-Davidson Motorcycle Shop, which was next door to the drive-in. The car ran into a chughole or over a drain sewer and made a loud noise. The car lights were off. They saw Hamilton get out of the car and go inside the Circle K Drive-In. The car then circled around and came back to the Whataburger Stand nearby. In a few minutes Hamilton came back out of the Circle K Drive-In with a brown bag in one hand and holding his hip with the other hand. As he came out and looked at Calloway and Mikulec, "he was walking, at first, in a slow walk, and then he kind of ran—to the car and got in and they sped off." There were several persons in the car but these witnesses could not see them well enough to identify the appellant as being one of the persons in the car.

Melvin Johnson, who had pled guilty to the same offense for which the appellant was on trial and been placed on probation, *was called by the appellant as a witness*.[1] He testified that his brother-in-law, Calvin Johnson, had had trouble with another man concerning the woman he was living with and was looking for a gun for protection. They saw Willie Hamilton in a lounge and asked him for a weapon. Hamilton obtained a pistol from the appellant, who was also in the lounge. The appellant and the Johnsons were not acquainted. The appellant and Hamilton got into a car with Melvin and Calvin Johnson. Melvin drove to a residence where Calvin got out and went inside with the pistol to get "his business straight." He soon came out and rejoined those who remained in the car. He handed the pistol back to Hamilton. After some discussion of bravery and daring feats, Hamilton asked that he be taken to a store. Hamilton pointed out the Circle K Drive-In on Leopard Street.

As they approached and he got out of the car, Hamilton said in a normal tone of

1. The jury was instructed that:

" . . . the witnesses, Willie Sterling Hamilton and Melvin Johnson are accomplice witnesses if any offense was committed. You are further instructed that you may not consider the testimony given by said witnesses in determining whether to convict the defendant of the offense charged against him by the indictment unless you believe the following: that such testimony is true; that such testimony shows the defendant is guilty of the offense charged by the indictment against him; that there is other evidence in the case outside the testimony of Willie Sterling Hamilton and Melvin Johnson which corroborates such testimony and tends to connect the defendant with the offense charged against him by the indictment. You are further instructed that even if you should so believe you still would not be authorized to convict defendant unless from all the evidence in the case you believe beyond a reasonable doubt that he is guilty as charged by the indictment.

"You are further instructed that one accomplice cannot corroborate another accomplice, but such corroborative evidence, if any, must be from some other source than Willie Sterling Hamilton and Melvin Johnson, or either of them, as hereinbefore charged."

The appellant, not the State, had called the witness Melvin Johnson, so the instruction regarding Melvin Johnson's testimony was unnecessary and more favorable to the appellant than the law required. Jenkins v. State, 484 S.W.2d 900 (Tex.Cr.App., 1972); Brown v. State, 476 S.W.2d 699 (Tex.Cr.App. 1972); Daviss v. State, 162 Tex.Cr.R. 280, 284 S.W.2d 713 (1955); Joseph v. State, 34 Tex.Cr.R. 446, 30 S.W. 1067 (Tex.Cr.App. 1895).

voice, "Let me out. Let me out and come speeding back by." Melvin Johnson said he then "understood" and "started realizing what he (Hamilton) was fixing to do" but "there wasn't any conversation in the car about what he was going to do."

After Hamilton came running to the car and was picked up and Johnson sped off, he testified "I took them (appellant and Hamilton) back up on the street. We stopped any way on the way to the streets in this little old parking lot and Hamilton robbed this—after they finished, after he robbed the store, he offered us seven dollars." Johnson then drove back to the lounge where he had met the appellant and Hamilton. When the appellant and Hamilton got out of the car, the appellant was carrying the sack containing the money.

The statement of the appellant which was admitted into evidence, reads as follows:

"My name is Lonnie Ray Chapman, Jr. I am 25 years old and live at 1617 Peabody. On 7–22–70 at approximately 1 a. m., I was with Willie Sterling Hamilton in front of the Cotton Club. Hamilton and I got in a car with two other guys and drove out to Hillcrest. I don't know the man's name that was driving the car. One of the men got out of the car after we got to Hillcrest to go see his girlfriend. We waited in the car. After the guy came out of the house and got back in the car, Hamilton suggested to the guy to take him to the Circle K on Leopard St. The man took us there and Hamilton got out of the car. He went into the store; I didn't know what he was going to do at the time. He later came out of the store and got back in the car. After we drove around awhile, Hamilton showed us the money and I realised (sic) he had robbed the store. He gave the other two guys some of the money and Hamilton and I got out of the car by the Cotton Club. We had a few drinks and I took two pills. A while later, we met Henry C. Taylor and started visiting around in his car with

him driving. Hamilton told Taylor to go to the Circle K on Horne Road where we arrived and I got out of the car and walked up to the Circle K. I had the chrome plated pearl handle revolver in my pocket. When I was in the store I got a soda and when the checker opened the cash register, I pulled the pistol and told him, 'give it all to me.' While the register was open, I took the money out myself and I then told the checker to go to a back storeroom and stay there. I left the store and went to the car and Taylor took off. We split up the money and rode around a while. Hamilton told Taylor to go to some motel on Shoreline. We made two passes down Shoreline. Hamilton had the pistol this time and he told Taylor to stop here near the Mayflower Motel. Hamilton got out. We went down a side street and waited for him. In a few minutes, we picked him up. We then went to Taylor's room and divied up the money. Hamilton kept the change. We left Taylor's room and dropped Hamilton off in front of the Cotton Club. I told Taylor to take me home. I haven't seen Hamilton since the robberies we committed. . . ."

While there are inconsistencies in the testimony of the accomplice witness, Hamilton, when asked in reference to the instant offense to "state whether or not you know the people in the car had discussed robbing the place before you went in there that night?" he testified, "We had discussed it."

■ The evidence already summarized is sufficient to sustain the appellant's conviction without considering the testimony of the accomplice Hamilton, bearing in mind it was the appellant who called the witness Melvin Johnson.

The appellant also contends that "The trial court erred in refusing to grant appellant's motion for instructed verdict for the reason that the State introduced in its entirety appellant's statement containing an

exculpatory statement because no evidence or insufficient evidence was introduced proving otherwise."

 During the hearing on the admissibility of the confession, outside the presence of the jury, the Assistant District Attorney stated that there were portions of the confession which he did not wish to introduce. The portions to be omitted are not designated by brackets on the confession itself nor is it reflected by testimony in the record. The Assistant District Attorney offered the entire statement into evidence in the jury's presence without omitting any portion thereof. After a discussion between counsel and the court, the trial court ruled that the State had offered all of the confession, including that portion said to be exculpatory, and was bound thereby. The court instructed the jury that unless it found from other evidence in the case that that portion of the confession which stated, "I didn't know what he was going to do at the time" was untrue beyond a reasonable doubt, the appellant was to be acquitted. The evidence which has already been set forth in detail is sufficient to support the jury's having found as untrue the part of the statement designated as being exculpatory. Cuevas v. State, 456 S.W.2d 110 (Tex.Cr.App.1970); Windom v. State, 429 S.W.2d 488 (Tex.Cr.App. 1968); Hignett v. State, 170 Tex.Cr.R. 342, 341 S.W.2d 166 (1960).

The appellant's remaining complaint is that "The trial court erred in allowing the State to introduce, over appellant's objection, the entire statement given by appellant to authorities for the reason that such statement contained appellant's confession to two extraneous offenses which did not bear on any issue of the case of trial, which did not solve any disputed issue and which was not a part of the res gestae."

The appellant's defense was that he was a victim of circumstances, was merely present, had no intention of participating in a robbery and had no knowledge that Hamilton was going to commit the rob-

bery. The evidence of the two extraneous offenses in which the appellant participated later the same morning was admissible to show his intent and knowledge and to rebut his defense.

This evidence was admissible even though it showed the commission of offenses after the offense for which he was being tried. See Blankenship v. State, 448 S.W.2d 476 (Tex.Cr.App.1969); McCollum v. State, 130 Tex.Cr.R. 105, 91 S.W.2d 1067 (Tex.Cr.App.1936); State v. Montegut, 257 La. 665, 243 So.2d 791 (1971); United States v. Mancuso, 444 F.2d 691 (5th Cir. 1971) and United States v. Prince, 264 F.2d 850 (3rd Cir.1959).

The judgment is affirmed.

Opinion approved by the Court.